**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ALISHA DEPASQUALE and TRAYTON COX, individually and on behalf of all others similarly situated, | Case No.: 2:20-cv-5370 |
| Plaintiffs, | |
| v. | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, | CLASS ACTION COMPLAINT |
| | Jury Demand Endorsed Hereon |
| Defendant. | |

Plaintiffs Alisha DePasquale and Trayton Cox (collectively "Plaintiffs"), individually and on behalf of a class of all others similarly situated (defined below), bring this class action suit against Nationwide Mutual Insurance Company ("Nationwide" or "Defendant"), and allege as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action seeking relief arising from Plaintiffs' contract with Nationwide for travel insurance.

2. Plaintiffs and others across the United States purchased travel insurance from Nationwide to protect their travel from cancellations, interruptions, missed connections, delay, and certain emergencies. Plaintiffs expected Nationwide's form travel insurance policy to provide reimbursement for trips in the event that those trips were prohibited from taking place. However, despite collecting premium payments from Plaintiffs and other similarly situated travelers, Nationwide is now refusing to pay legitimate travel cancellation claims.

3. On January 15, 2020, Plaintiffs purchased Nationwide's travel insurance, Plan Number N600 ("Insurance Policy" or "Policy") to protect their intended trip to Mexico. The Policy is attached as Exhibit 1. The Policy provides coverage benefits for trip cancellations and interruptions caused by specific occurrences, including "quarantine." Specifically, the Policy's "Trip Cancellation" coverage claims that "[Nationwide] will pay a benefit, up to the Maximum Benefit shown on the Schedule, if You are prevented from taking Your Covered Trip for any of the following reasons that take place after the Effective Date: . . . (b) You or a Traveling Companion being . . . quarantined . . . within 10 days of departure . . . ." Furthermore, the Policy's "Trip Interruption" coverage claims that "[Nationwide] will pay a benefit, up to the maximum shown on the Confirmation of Coverage, if You are unable to continue on Your Covered Trip due to: . . . (b) You or a Traveling Companion being . . . quarantined . . . within 10 days of departure . . . ."

4. Plaintiffs were scheduled to travel from Portland, Oregon to Los Cabos, Mexico on April 3, 2020 and return to Portland on April 7, 2020.

5. In March 2020, in light of the novel Coronavirus strain which causes COVID-19, state and local governments around the country had issued "stay-at-home" and "shelter-in-place" orders prohibiting individuals from leaving their home, except for essential tasks (collectively, "COVID-19 Civil Authority Orders"). In early March 2020, the President of the United States issued COVID-19 guidelines, calling for Americans to avoid discretionary travel, and within days, the Department of State issued a Global Level 4 Health Advisory advising U.S. Citizens to avoid all international travel (collectively, "Travel Advisories"). As a result of the COVID-19 Civil Authority Orders and Travel Advisories, Plaintiffs were unable to travel internationally, and could not complete their intended trip.

6. Plaintiffs bring this action on behalf of a nationwide class of policyholders who purchased similar standard Nationwide travel insurance policies, which provide coverage to policyholders for cancelled or interrupted travel due to mandatory preventative measures implemented by governmental bodies in the form of the COVID-19 Civil Authority Orders and the Travel Advisories.

7. Plaintiffs, individually, on behalf of the class, (1) seek a declaratory judgment holding that Defendant is contractually obligated to indemnify Plaintiffs' and class members' covered losses resulting from compliance with the Travel Advisories and COVID-19 Civil Authority Orders, implemented as preventative measures to reduce the spread of the novel coronavirus strain which causes COVID-19 pursuant to 28 U.S.C. § 2201; and (2) also allege a cause of action for breach of contract.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because members of the Class are citizens of states different from the Defendant and the amount in controversy exceeds $5 million, exclusive of costs and interest.

9. This Court has personal jurisdiction over Defendant because it maintains its headquarters in Ohio and/or does a substantial amount of business in Ohio, thereby intentionally availing itself of the laws of the state.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## PARTIES

11. Plaintiffs Alisha DePasquale and Trayton Cox are citizens of the state of Arizona and domiciled in Camp Verde, Yavapai County, Arizona. It should be noted that during the time of the events alleged herein, the Plaintiffs were citizens of the state of Oregon and domiciled in Portland, Multnomah County, Oregon.

12. Defendant Nationwide Mutual Insurance Company is an Ohio corporation with its headquarters and principal place of business in Columbus, Franklin County, Ohio. Nationwide is one of the largest insurance and financial companies in the world and is affiliated with dozens of other insurance and financial companies, through which it provides travel insurance.

## FACTUAL ALLEGATIONS

### A. The Global COVID-19 Pandemic

13. COVID-19 is an infectious disease caused by a novel Coronavirus known as SARS-CoV-2. The Coronavirus is extremely contagious and physically infects and stays on surfaces of objects or materials for an extended period of time. For example, the virus remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard, and up to two to three days on plastic and stainless steel.

14. The first case of COVID-19 in the United States was confirmed in the State of Washington on January 20, 2020. *See First Case of 2019 Novel Coronavirus in the United States*, THE NEW ENGLAND JOURNAL OF MEDICINE (Mar. 5, 2020), https://www.nejm.org/doi/full/10.1056/NEJMoa2001191.

15. On January 30, 2020, the World Health Organization ("WHO") declared that the Coronavirus outbreak constituted a public health emergency of massive proportions, able to affect every country in the world.

16. On February 28, 2020, the Oregon Health Authority announced the first reported Oregon COVID-19 case. *See Health Officials Continue Investigating as They Urge Good Hand Hygiene, Covering Coughs, Staying Home if Sick* (Feb. 28, 2020), https://www.oregon.gov/oha/ERD/Pages/Oregon-First-Presumptive-Case-Novel-Coronavirus.aspx.

17. On February 29, 2020, the first COVID-19 fatality was reported in Washington. *See Washington State Report First COVID-19 Death*, CENTER FOR DISEASE CONTROL AND PREVENTION (Feb. 29, 2020), https://www.cdc.gov/media/releases/2020/s0229-COVID-19-first-death.html.

18. On March 11, 2020, the WHO declared that the Coronavirus was a worldwide pandemic.

19. On March 13, 2020, the President of the United States declared the COVID-19 pandemic to be a national emergency.

20. Soon thereafter, the federal Centers for Disease Control ("CDC") issued guidance indicating that people should not attend gatherings of more than 10 people. People in congregate environments, including places where people live, eat, and meet in close proximity, face increased exposure to COVID-19. *See Interim Guidance for Coronavirus Disease 2019 (COVID-19)*, CENTERS FOR DISEASE CONTROL (Mar. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/mass-gatherings-ready-for-covid-19.html.

21. On March 16, 2020, the President of the United States issued guidelines recommending that Americans avoid all discretionary travel. *See Coronavirus Guidelines for*

5

*America*, WHITEHOUSE.GOV (Mar. 16, 2020), https://www.whitehouse.gov/briefings-statements/coronavirus-guidelines-america/

22. On March 19, 2020, the State Department issued a Level 4 Health Advisory, advising Americans not to travel outside the United States. The Level 4 Health Advisory is the highest possible travel advisory the federal government is able to issue.

23. According to the CDC, travel increases the risk of contracting and spreading COVID-19. The CDC urges travelers to remain at home as the best form of protection against COVID-19. *See Travel during the COVID-19 Pandemic*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/travelers (last accessed on Oct. 4, 2020).

24. The CDC also issued a Level 3 Travel Warning for Mexico, noting that COVID-19 risks in Mexico are high, recommending that travelers avoid all non-essential travel to Mexico, and advising against essential travel to Mexico as well. *See COVID-19 in Mexico*, CENTERS FOR DISEASE CONTROL, https://wwwnc.cdc.gov/travel/notices/warning/coronavirus-mexico (last accessed October 2, 2020).

25. As of September 25, 2020, there have been nearly 7.1 million confirmed cases in the United States and more than 204,000 deaths. In Oregon alone, there have been 32,314 cases and more than 500 deaths. *See COVID-19 Updates*, OREGON HEALTH AUTHORITY, https://govstatus.egov.com/OR-OHA-COVID-19 (last accessed Sept. 27, 2020).

    **B.**    **COVID-19 Civil Authority Orders Issued by State and Local Governments**

26. On March 8, 2020, Oregon Governor Kate Brown declared a state of emergency, and on March 23, 2020, issued an executive order directing Oregon residents to stay at their place of residence and minimize non-essential travel. *See* State of Oregon Executive Order No.

6

20-12 (Mar. 23, 2020) available at https://govsite-assets.s3.amazonaws.com/ (last accessed Sept. 26, 2020).

27. On March 11, 2020, Multnomah County declared a State of Emergency. Multnomah County's State of Emergency declaration has been extended twice, once on April 9, 2020, and again on July 2, 2020. *See Board Extends COVID-19 Emergency Declaration*, MULTNOMAH COUNTY (Jul. 2, 2020), https://multco.us/multnomah-county/news/board-extends-covid-19-emergency-declaration.

28. On March 12, 2020, Portland Mayor Ted Wheeler issued a State of Emergency for the city of Portland. *See Mayor Declares State of Emergency for the City of Portland*, PORTLAND.GOV (Mar. 12, 2020 12:00 pm), https://www.portland.gov/wheeler/news/2020/3/12/mayor-declares-state-emergency-city-portland.

29. Furthermore, Oregon Executive Order 20-12 directs individuals to "minimize travel, other than essential travel to or from a home, residence, or workplace; for obtaining or providing food, shelter, essential consumer needs, education, healthcare, or emergency services . . . and other essential travel consistent with the directives of my Executive Orders and guidance from the Oregon Health Authority." Executive Order 20-12 incorporates by reference Oregon Revised Statutes 401.990 which provides that "[a]ny person knowingly violating any provision of this chapter . . . shall, upon conviction thereof, be guilty of a Class C misdemeanor." A Class C misdemeanor can result in a fine of no more than $1,250.00 or maximum imprisonment of thirty (30) days. *See* ORS §§ 161.615, 161.635.

30. Virtually every state and local government throughout the United States has implemented, and extended, similar COVID-19 Civil Authority Orders which mandated that

Plaintiffs and members of the Class only leave their home for essential purposes, which did not include discretionary air travel.

### C. Plaintiffs' Insurance Policy

31. On January 15, 2020, Plaintiffs paid $128.90 to purchase their Policy to insure against, *inter alia*, trip cancellation, interruptions, and delays for a trip to Mexico that they intended to take between April 3, 2020 and April 7, 2020. The stated maximum insurance coverage limit provided by the Insurance Policy for trip cancellation is up to the cost of the trip. Plaintiffs paid $1,718.60 for their trip.

32. In part, the "Trip Cancellation" portion of the Insurance Policy states: "[Nationwide] will pay a benefit, up to the Maximum Benefit shown on the Schedule, if You are prevented from taking Your Covered Trip for any of the following reasons that take place after the Effective Date." Under the list of reasons the Policy provides,

> b) You or a Traveling Companion being hijacked, **quarantined**, required to serve on a jury, subpoenaed, the victim of felonious assault within, 10 days of departure; or having Your principal place of residence made uninhabitable by fire, flood or other natural disaster; or burglary of Your principal place of residence within 30 days of departure.

(emphasis added).

33. The term "quarantine" is not defined anywhere within the Insurance Policy.

### D. Refusal to Pay Plaintiffs' Request for Coverage

34. Plaintiffs first contacted their travel company, Cheap Caribbean, on April 1, 2020 to cancel their trip. Plaintiffs were directed to Nationwide's third-party claims administrator, Trip Mate, for claims processing under the Insurance Policy trip cancellation coverage. Plaintiffs filed a claim on April 1, 2020 seeking coverage for their cancelled trip. On June 17, 2020, Trip Mate requested from Plaintiffs proof that quarantine was the cause of the trip

cancellation. Trip Mate's request further stated, "[p]lease note that stay at home orders is [sic] not considered a quarantine under this plan."

35. On June 17, 2020, Plaintiffs replied to Trip Mate and explained how the COVID-19 Civil Authority Orders and Travel Advisories (previously referenced herein) prevented them from leaving the country. On June 22, 2020, Plaintiffs sent a further reply to Trip Mate attaching documentation evidencing restrictions on travel due to COVID-19.

36. On July 7, 2020, Trip Mate sent Plaintiffs another request for additional information and explained:

> We are also in receipt of the documentation you provided showing the recommendations from the Centers for Disease Control. Please note, these recommendations are not considered to be a quarantine. There is no documentation to verify a Physician or other government agency asked you specifically to quarantine, which is what is required in order pay a claim for this covered event. Additionally, a stay at home order issued from a governor is not a quarantine as it is not specific to you or your Traveling Companion. We can attempt to offer you coverage under the job loss provision if you can provide us with the above requested information.

37. Thereafter, Plaintiffs filed a complaint with the Missouri Attorney General's office regarding their insurance claim, which sent a direct inquiry to Defendant and Trip Mate regarding the issue on July 15, 2020. On August 3, 2020, Nationwide responded to the Missouri Attorney General's office, reiterating its position that the COVID-19 Civil Authority Orders and Travel Advisories do not qualify as a "quarantine" under the Nationwide Insurance Policy.

38. Specifically, Nationwide claimed that "the [COVID-19 Civil Authority Order which affected Plaintiffs] does not require strict isolation, as it allows residents to leave their homes for necessary functions." However, the Policy does not define "quarantine" at all, and nothing in the Policy provides any indication that it should be limited to the definition which Nationwide now attempts to attribute to the term.

39. Defendant's position is further inappropriate given that the term "quarantine" under travel insurance policies such as the Policy is frequently defined as "enforced isolation of your or your Traveling Companion, for the purpose of preventing the spread of illness, disease, or pests," which would certainly include the COVID-19 Civil Authority Orders. *See Robbins v. Generali Global Assistance, Inc.*, 2:20-cv-04904 (C.D. Cal. 2020), at Dkt. No. 1 at ¶ 2.

40. Defendant's rejection of Plaintiffs' claims is unfounded because, as explained, travel cancellations caused by "quarantine" are explicitly covered under the Insurance Policy. Plaintiffs' travel cancellation was caused by COVID-19 Civil Authority Orders and Travel Advisories, which functioned as a quarantine for Plaintiffs since they restricted non-essential travel and were issued to prevent the potential spread of COVID-19.

### E. Insureds' Claims Have Been Denied Throughout the United States

41. COVID-19 has negatively impacted travel throughout the United States and the world. Many individuals were forced to cancel, interrupt or delay their travel due to COVID-19 Civil Authority Orders.

42. Defendants do not intend to cover losses caused by the COVID-19 pandemic and COVID-19 Civil Authority Orders enacted in response thereto as part of travel protection coverage. Nationwide has wrongfully refused to honor Plaintiffs' and class members' claims for coverage as defined in the Insurance Policy.

43. As a result, individuals that have purchased travel protection coverage with Nationwide will suffer significant losses absent declaratory relief from this Court.

44. A declaratory judgment determining that "quarantine," as a qualifying reason for coverage, applies to restriction of movement and travel caused by the COVID-19 Civil Authority Orders and Travel Advisories is necessary to prevent Plaintiffs and similarly situated Class

members from being denied critical coverage for similar policies for which they have paid premiums.

## CLASS ACTION ALLEGATIONS

45. Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) as a class action on behalf of herself and all others similarly situated for the purpose of asserting claims alleged in this Complaint on a common basis.

46. Plaintiff seeks certification of the following nationwide class ("Class"):

> All persons in the United States who have entered into a standard travel insurance policy with Nationwide, or any of its affiliates operating under its name, to insure travel, where such policy provides for trip cancellation, interruption and/or delay coverage benefits, and who had to cancel or interrupt trips due to measures put in place by a COVID-19 Civil Authority Order after the policies' "Effective Date" and within ten (10) days of said trips' departure dates.

47. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officers presiding over this matter, members of their immediate family, members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

48. Plaintiffs reserve the right to amend or modify the Class definitions with greater specificity or division after having had an opportunity to conduct discovery.

49. **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).** As the proposed Class includes at least thousands of persons who are insured against, among other things, trip cancellation, trip interruption, and trip delays, there is a significant risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendant. For example, declaratory relief

may be entered in multiple cases, but the ordered relief may vary, causing Defendant to have to choose the court order with which it will comply.

50. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous that the joinder of all members is impractical. While the exact numbers of members in the Class are unknown to Plaintiffs at this time, it is believed that the Class is comprised of tens of thousands of persons and entities geographically dispersed throughout the United States. The names and addresses of Class members are available from Defendant's records, and members of the Class may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

51. **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual members of the Class. The common questions include:

    a.    Whether the Policy, and other substantially similar policies issued by Defendant, cover losses created by COVID-19 Civil Authority Orders;

    b.    Whether the COVID-19 Civil Authority Orders and Travel Advisories constitute causes of "quarantine" for purposes of Plaintiffs' and Class members' travel insurance policies;

    c.    Whether Defendant has repudiated and breached the Insurance Policy and substantially similar policies issued by Defendant by denying claims for travel coverage;

d. Whether Defendant's violations of the Insurance Policies and substantially similar policies issued by Defendant were committed intentionally, recklessly, or negligently; and

e. Whether Plaintiffs and Class members have suffered damages as a result of Defendant's breach.

52. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of Class members because Plaintiffs and members of the Class have been subjected to the same unlawful conduct and damaged in the same way. Defendant's conduct that has given rise to the claims of Plaintiffs and other insureds is the same for all members of the Class.

53. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Defendant to obtain relief for all of the Insureds. Plaintiffs have no conflicts of interest with the Class and entered into a Policy that is largely similar to the policies that Class members entered into with Nationwide. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

54. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the members of the

Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each member of the Class would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

55. **Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant through its form Policies with Plaintiffs and members of the Class, acted or refused to act on grounds generally applicable to the Class, making uniform injunctive and declaratory relief appropriate on a Class-wide basis. Moreover, Defendant continues to maintain that travel cancellation, interruption, and delay due to the COVID-19 Civil Authority Orders and Travel Advisories are not covered under their form insurance policies, thus making declaratory relief a live issue and appropriate to the Class as a whole.

### FIRST CAUSE OF ACTION
(Declaratory Judgment Against Defendant)

56. Plaintiffs reallege and incorporate by reference the preceding paragraphs above as if fully set forth herein.

57. Plaintiffs bring this cause of action individually and on behalf of the other Class members.

58. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the

rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

59. Under Plaintiffs' and Class members' travel insurance coverage as defined in the Policy and substantially similar policies issued by Defendant, Defendant must pay a benefit, up to the cost of the trip, for travel that is cancelled, interrupted or delayed due to quarantine.

60. Defendant has wrongfully maintained the position that the COVID-19 Civil Authority Orders and Travel Advisories do not qualify as a covered "quarantine" for purposes of the Policy. "Quarantine" can be reasonably construed to mean isolation or restriction of movement to prevent the spread of diseases. The ability of the COVID-19 Civil Authority Orders and Travel Advisories to restrict movement and travel constitutes a "quarantine" under the Policy and substantially similar policies issued by Defendant. Since exclusions of coverage must be narrowly construed, the language drafted by the insurer with ambiguity should ordinarily be construed against the drafter and in favor of Plaintiffs and members of the Class.

61. An actual controversy has arisen between Plaintiffs and members of the Class and Defendant as to the rights, duties, responsibilities, and obligations of the parties under the Policy and substantially similar policies issued by Defendant in that Plaintiffs and members of the Class contend, and Defendant disputes and denies, that:

    a. The COVID-19 Civil Authority Orders and Travel Advisories constitute a "quarantine" and therefore, a covered cause of loss for purposes of the Policies and substantially similar policies issued by Defendant;

    b. The restriction on movement and travel to prevent the spread of disease by the COVID-19 Civil Authority Orders and Travel Advisories has specifically caused Insureds to cancel, interrupt, or delay travel;

    c. The COVID-19 Civil Authority Orders issued by governmental official trigger coverage and benefit payment under the Policies and substantially similar policies issued by Defendant;

15

    d.    The Policies and substantially similar policies issued by Defendant include coverage for losses caused by the need to prevent the spread of the Coronavirus;

    e.    The Policies and substantially similar policies issued by Defendant provide coverage to Plaintiff and members of the Class for any current and future COVID-19 Civil Authority Order which restricts or prohibits travel due to the need to prevent the spread of the Coronavirus; and

    f.    Resolution of the duties, responsibilities, and obligations under the Policies and substantially similar policies issued by Defendant is necessary as no adequate remedy at law exists and declaration of the Court is needed to resolve the dispute and controversy.

62. Plaintiffs, individually and on behalf of members of the Class, seek a Declaratory Judgment finding that the Policies and substantially similar policies issued by Defendant cover, under the term "quarantine," the restriction of travel caused by or resulting from governmental action that forced Plaintiffs and members of the Class to cancel, interrupt, or delay their travel, subject to no limitations or exclusions under the Policies.

## SECOND CAUSE OF ACTION
(Breach of Contract Against Defendant)

63. Plaintiffs reallege and incorporate by reference the preceding paragraphs above as if fully set forth herein.

64. Plaintiffs bring this Cause of Action individually and on behalf of the other members of the Class.

65. Plaintiffs' Policy and other substantially similar policies issued by Defendant, as well as those Policies of other Class members, are contracts under which Nationwide was paid premiums in exchange for its promise to pay Plaintiffs, and the other Class members, a benefit for claims covered by each policy.

66. As described herein, trip cancellation, interruption, and delay incurred by Plaintiffs and Class members are claims covered under the Policies and all substantially similar policies issued by Defendant.

67. As part of standard travel coverage, Defendant agreed to pay Plaintiffs and Class members a benefit for trip cancellation, interruptions, and delay due to quarantine. The maximum amount of benefits under the Policies and all substantially similar policies issued by Defendant is the cost of a cancelled or interrupted trip, or up to $500 for a trip delay.

68. The COVID-19 Civil Authority Orders and Travel Advisories directly prevented Plaintiffs and Class members from travelling. Accordingly, trip cancellation, interruption, and delay caused by the COVID-19 Civil Authority Orders and Travel Advisories triggered the benefit payment provisions of the Policies and all substantially similar policies issued by Defendant.

69. Plaintiffs and other Class members have complied with all applicable provisions of the Policies and all substantially similar policies issued by Defendant and/or those provisions have been waived by Defendant and/or Defendant is estopped from asserting them. Yet, Defendant has abrogated their insurance coverage obligations under the clear and unambiguous terms of the Policies and all substantially similar policies issued by Defendant.

70. By denying coverage for any losses incurred by Plaintiffs and other members of the Class in connection with the COVID-19 Civil Authority Orders and Travel Advisories, Defendant has breached its coverage obligations under the Policies and all substantially similar policies issued by Defendant.

71. As a result of Defendant's breaches of contract, Plaintiffs and other members of the Class have sustained substantial damages for which Defendant is liable, in an amount to be established at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated individuals, pray for relief and judgment against Defendant as follows:

A. Determining that this action is a proper class action under one or more provisions of Federal Rule of Civil Procedure 23, appointing Plaintiffs to serve as a Class Representatives and appointing their counsel to serve as Class Counsel;

B. Issuing a Declaratory Judgment declaring the parties' rights and obligations under the Insurance Policy and all substantially similar policies issued by Defendant at issue;

C. Awarding Plaintiffs and the Class compensatory damages against Defendant, jointly and severally, for all damages sustained as a result of Defendant's breach of the Insurance Policies and all substantially similar policies issued by Defendant, in an amount to be proven at trial, including interest thereon;

D. Awarding Plaintiffs and the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees incurred in this action; and

E. Awarding such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED: October 13, 2020                Respectfully submitted,

*/s/ Jeffrey S. Goldenberg*
Jeffrey S. Goldenberg (0063771)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8297
Facsimile: (513) 345-8294
Email:  jgoldenberg@gs-legal.com
            tschneider@gs-legal.com

James C. Shah
Michael Ols
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile:  866-300-7367
Email:  jshah@sfmslaw.com
            mols@sfmslaw.com

John F. Edgar
Ryan J. Loehr
**EDGAR LAW FIRM LLC**
2600 Grand Blvd., Suite 400
Kansas City, MO 64108
Telephone: (816) 531-0033
Facsimile:  (816) 531-3322
Email:  jfe@edgarlawfirm.com
            rjl@edgarlawfirm.com

*Attorneys for Plaintiffs and the Proposed Class*