# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ALISHA DEPASQUALE, *et al.*,

    Plaintiffs,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY,

    Defendant.

:
:
:
:

Case No. 2:20-cv-5370
Judge Sarah D. Morrison
Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Nationwide Mutual Insurance Company's Motion to Dismiss (ECF No. 13) and Motion to Strike Class Allegations (ECF No. 14). Plaintiffs Alisha Depasquale and Trayton Cox have responded (ECF Nos. 17, 18) and Nationwide replied (ECF Nos. 19, 20). For the reasons set forth below, Nationwide's Motion to Dismiss is **GRANTED** and its Motion to Strike is **DENIED as moot**.

## I.    BACKGROUND

All well-pled factual allegations in the Complaint (Compl., ECF No. 1) are considered as true for purposes of the Motion to Dismiss. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016). The following summary draws from the allegations in that Complaint, the documents integral to and incorporated therein, and certain other documents which are subject to judicial notice.

On January 15, 2020, Plaintiffs purchased travel insurance from Nationwide (the "Travel Insurance Policy"), intending to protect a trip from Oregon to Mexico planned for early-April 2020. (Compl., ¶¶ 3–4. *See also* Travel Insurance Policy, ECF No. 1-1.) The Travel Insurance Policy included coverage for, *inter alia*, trip cancellation and interruption caused by the insured "being . . . quarantined . . . within 10 days of departure." (*Id.*, ¶ 3. *See also* Travel Insurance Policy, PAGEID # 24.) The Travel Insurance Policy does not define "quarantine." (*Id.*, ¶ 33.)

Shortly after Plaintiffs purchased the Travel Insurance Policy, and shortly before their planned departure, COVID-19 reached the United States.

On March 8, 2020, Oregon Governor Kate Brown declared a state of emergency. (*Id.*, ¶ 26.) Within the week, Multnomah County and the City of Portland did the same. (*Id.*, ¶¶ 27–28.) The World Health Organization (WHO) declared COVID-19 to be a global pandemic, and the President of the United States declared a national emergency. (*Id.*, ¶¶ 18–19.) On March 15, the Centers for Disease Control and Prevention (CDC) issued guidance indicating that people should not attend gatherings of more than ten people. (*Id.*, ¶ 20.) In rapid succession, the White House recommended that Americans avoid all discretionary travel and the State Department advised Americans not to travel outside the United States. (*Id.*, ¶¶ 21–22.) On March 23, Governor Brown issued Executive Order 20-12. (*Id.* ¶ 26. *See also* Or. Exec. Order No. 20-12, available online at https://www.oregon.gov/gov/admin/Pages/eo_20-12.aspx (last visited May 4, 2021)). Executive Order 20-12 directs and orders, in relevant part:

1. It is essential to the health, safety, and welfare of the State of Oregon during the ongoing state of emergency, consistent with the directives set forth in my Executive Orders and guidance issued by the Oregon Health Authority. To that end, . . . I am ordering the following:

    a. Non-essential social and recreational gatherings of individuals outside of a home or place of residence (e.g., parties, celebrations, or other similar gatherings and events) are prohibited immediately, regardless of size, if a distance of at least six feet between individuals cannot be maintained.

    . . .

    c. When individuals need to leave their homes or residences, they should at all times maintain social distancing of at least six feet from any person who is not a member of their immediate household, to the greatest extent possible, and comply with the other Social Distancing Requirements guidance issued by the Oregon Health Authority.

    d. Individuals may go outside for outside recreational activities (walking, hiking, etc.), but must limit those activities to non-contact, and are prohibited from engaging in outdoor activities where it is not possible to maintain appropriate social distancing (six feet or more between individuals).

    . . .

22. Individuals are directed to minimize travel, other than essential travel to or from a home, residence, or workplace; for obtaining or providing food, shelter, essential consumer needs, education, health care, or emergency services; for essential business and government services; for the care of family members, household members, elderly persons, minors, dependents, persons with disabilities, or other vulnerable persons, pets or livestock; travel as directed by government officials, law enforcement, or courts; and other essential travel consistent with the directives of my Executive Orders and guidance from the Oregon Health Authority.

Or. Exec. Order No. 20-12. Any person found to knowingly violate Executive Order 20-12 was subject to misdemeanor criminal charges. *Id*. *See also* Or. Rev. Stat. § 401.990. Plaintiffs refer to these federal, state, and local government pronouncements as the "COVID-19 Civil Authority Orders and Travel Advisories."

3

Plaintiffs cancelled their trip to Mexico on April 1, 2020, and filed a claim under the Travel Insurance Policy's quarantine coverage. (Compl., ¶ 34.) The claims administrator, Trip Mate, requested substantiating documentation and noted that "stay at home orders is [*sic*] not considered a quarantine under this plan." (*Id.*) In response, Plaintiffs "explained how the COVID-19 Civil Authority Orders and Travel Advisories . . . prevented them from leaving the country." (*Id.*, ¶ 35.) Trip Mate again requested documentation, explaining:

> We are also in receipt of the documentation you provided showing the recommendations from the Centers for Disease Control. Please note, these recommendations are not considered to be a quarantine. There is no documentation to verify a Physician or other government agency asked you specifically to quarantine, which is what is required in order pay a claim for this covered event. Additionally, a stay at home order issued from a governor is not a quarantine as it is not specific to you or your Traveling Companion.

(*Id.*, ¶ 36.) Plaintiffs' maintained their position that their "travel cancellation was caused by COVID-19 Civil Authority Orders and Travel Advisories, which functioned as a quarantine for Plaintiffs since they restricted non-essential travel and were issued to prevent the potential spread of COVID-19." (*Id.*, ¶ 40.)

Plaintiffs filed suit on October 13, 2020, requesting declaratory judgment and damages based on Nationwide's alleged breach of contract for failure to pay their claim. (*Id.*, *generally*.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

4

(2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III. CHOICE OF LAW

As a threshold matter, the Court must determine the applicable law. "In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state"—in this instance, Ohio. *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The parties propose that, under Ohio's choice-of-law rules, Oregon law governs. (*See* ECF No. 13, 5 n.3.) However, neither identifies a conflict

5

between the laws of Ohio and Oregon requiring a choice-of-law analysis. *See Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 111 (Ohio 2006) (holding that "[a]n actual conflict between Ohio law and the law of another jurisdiction must exist before a choice-of-law analysis is undertaken"). The parties having provided no reason to do otherwise, the Court will apply Ohio law.

## IV. ANALYSIS

Nationwide now argues that the breach of contract claim should be dismissed because the Complaint fails to allege facts sufficient to show that the quarantine[1] coverage was triggered and that failure to pay benefits cannot, therefore, constitute a breach. Nationwide further argues that the Complaint fails to allege facts showing that Plaintiffs performed under the contract, and that the claim for declaratory judgment is redundant. Because Nationwide's first argument is well-taken and is dispositive, the Court will not discuss the alternatives.

Both parties acknowledge that the Travel Insurance Policy does not define "quarantine." The term therefore requires interpretation—a matter for the Court. *See Leber v. Smith*, 639 N.E.2d 1159, 1163 (Ohio 1994) ("The interpretation of an insurance contract involves a question of law to be decided by a judge."). Under Ohio law, insurance contracts are construed like any other written contract. *Scott v. Allstate Indem. Co.*, 417 F. Supp. 2d 929, 932 (N.D. Ohio 2006). "The court's role in

---

[1] Nationwide also argues that the Complaint fails to allege facts sufficient to show that job loss coverage was triggered. The Complaint contains a single passing reference, in a block-quotation from Trip Mate correspondence, to job loss coverage. To the extent Plaintiffs intend this passing reference to establish the basis for a breach of contract claim based on job loss coverage, they have failed to state a claim.

6

interpreting a contract is to give effect to the intent of the parties." *Fujitec Am., Inc. v. AXIS Surplus Ins. Co.*, 458 F. Supp. 3d 736, 743 (S.D. Ohio 2020) (Litkovitz, M.J.) (quotation omitted). To give such effect, "[c]ontract terms are generally to be given their ordinary meaning when the terms are clear on their face," and courts must "apply the plain language of the contract when the intent of the parties is evident from the clear and unambiguous language in a provision." *CoMa Ins. Agency v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013) (citations omitted). *See also Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997). "An insurance contract will only require interpretation if the applicable language is ambiguous—that is, open to more than one interpretation." *Scott*, 417 F.Supp.2d at 932. When an insurance contract contains ambiguous language, such language must be "construed strictly against the insurer and liberally in favor of the insured." *Id.* However, "liberal construction cannot be used to create an ambiguity where one does not exist." *Id.* "If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." *Id.* at 933.

In their Motion to Dismiss, Nationwide argues that "being . . . quarantined" is open to only one interpretation. In its view, the plain meaning of a "quarantine" order is characterized by two key elements: (i) that it "is directed at *specific persons who were confined because they were or may have been exposed to a communicable disease*" and (ii) that it requires "*separation and confinement.*" (ECF No. 13, 10.) Plaintiffs argue in response that Nationwide's proposed definition is unnecessarily

7

narrow, and that "quarantine" can be plausibly interpreted to mean any "form of isolation or confinement to prevent the spread of disease." (ECF No. 17, 11.) Plaintiffs go on to argue that, under this broader definition, the COVID-19 Civil Authority Orders and Travel Advisories "functioned as a 'quarantine' and, thus . . . triggered coverage under the [Travel] Insurance Policy." (*Id.*)

"To ascertain the common meanings of terms or phrases not defined in the language of contracts, Ohio courts routinely turn to dictionaries." *Textileather Corp. v. GenCorp Inc.*, 697 F.3d 378, 382 (6th Cir. 2012). Merriam-Webster.com defines "quarantine," in relevant part[2], as follows:

> 3  a : a restraint upon the activities or communication of persons or the transport of goods designed to prevent the spread of disease or pests
>
> 4     : a state of enforced isolation

*Quarantine*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/quarantine (last visited May 3, 2021). Dictionary.com provides several more definitions, including:

> 1.    a strict isolation imposed to prevent the spread of disease.
>
> 6.    the detention or isolation enforced.

*Quarantine*, DICTIONARY.COM, https://www.dictionary.com/browse/quarantine (last visited May 3, 2021). The Oxford English Dictionary provides still others:

---

[2] In addition to the definitions included here, "quarantine" can mean a physical location or enclosure. It can also mean a period of forty days. It has a meaning specific to shipping and ports, another specific to geopolitics, and still another specific to computing. It is the Court's task to give effect to the intent of the parties to the Travel Insurance Policy. As a result, any clearly irrelevant or implausible meaning of the word is omitted from discussion.

4. a. Originally: isolation imposed on newly arrived travellers in order to prevent the spread of disease; a period of time spent in such isolation. Later also: such isolation applied to a person or animal known to be suffering from an infectious disease or to the contacts of a such a person or animal, or to newly imported animals, plants, or inanimate objects. Also: the fact or practice of imposing isolation or of being isolated in this way. . . .

*Quarantine*, OXFORD ENGLISH DICTIONARY,

https://www.oed.com/viewdictionaryentry/Entry/155959 (last visited May 3, 2021).

Finally, Black's Law Dictionary defines "quarantine" to mean:

1. The isolation of a person or animal afflicted with a communicable disease or the prevention of such a person or animal from coming into a particular area, the purpose being to prevent the spread of disease.

*Quarantine*, BLACK'S LAW DICTIONARY (11th ed. 2019).

The notion of an *imposed isolation*—a distillation of the elements identified by Nationwide—runs through each definition. It is the hallmark of quarantine and it is distinctly absent from the COVID-19 Civil Authority Orders and Travel Advisories. The CDC and State Department "recommended" that Americans avoid discretionary travel and "advis[ed]" against foreign travel. Crucially, the Governor of Oregon "directed [Oregonians] to minimize travel," subject to a litany of exceptions. Or. Exec. Order No. 20-12, § 22. The Executive Order expressly allows individuals to "go outside for outside recreational activities" and seems to allow social and recreational gatherings outside the home "if a distance of at least six feet between individuals can[] be maintained." *Id.*, § 1. The Court acknowledges that Plaintiffs' planned trip to Mexico might have violated the COVID-19 Civil Authority

9

Orders and Travel Advisories, subjecting them to criminal penalties under Oregon law—but that alone does not make a quarantine.

This conclusion is supported by the understanding of "quarantine" in Oregon's public health statutes, *see* Or. Rev. Stat. § 433.001(11), and case law from across the country stretching back more than a century. *See, e.g., Jacobson v. Commw. of Mass.*, 197 U.S. 11, 29 (1905) (describing legitimate use of quarantine powers at port of entry as being held "against one's will" by port authorities on a ship or in a quarantine station); *Cty. of Butler v. Wolf*, 486 F. Supp. 3d 883, 913–14 (W.D. Pa. 2020) (distinguishing statewide COVID-19 lockdown orders from state quarantine powers); *Cassell v. Snyders*, 458 F. Supp. 3d 981, 1002–03 (N.D. Ill. 2020) (finding that Illinois stay-at-home order "falls far short of a 'quarantine,'" which it defines as "a state of enforced isolation").[3]

Plaintiffs cite one decision and two court filings as support for their position that "quarantine" could be plausibly interpreted to include the COVID-19 Civil Authority Orders and Travel Advisories. None is helpful to Plaintiffs' case. First, Plaintiffs cite *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291 (N.D. Ill. 2020), in which the court denied Nationwide's motion to dismiss breach of contract claims premised on travel insurance coverage for a COVID-19-related trip cancellation in March 2020. The policy at issue in that case provided coverage "if the insured is prevented from taking her trip due to . . . sickness that results in

---

[3] Plaintiffs note that many of these cases analyze the constitutionality of stay-at-home or non-essential business closure orders, and argue that the outcome should be different in the travel insurance context. Absent a plausible alternative interpretation of the term "quarantine," the Court cannot agree.

10

medically imposed restrictions as certified by a physician at the time of loss preventing the insured's participation in the trip" or "on account of being quarantined." *Id*. at 1294. The court concluded that Ms. Dowding had plausibly alleged that coverage was triggered under either the sickness or quarantine coverages. *Id*. at 1296. The court did not expound on its conclusion, or belabor the definition of quarantine, due to a critical fact giving rise to that action: Ms. Dowding could not take her trip in part because she was sick with cough. Although her physician diagnosed bronchitis, the court noted that coughing is a symptom of COVID-19 and that diagnostic tests were not widely available at the time. *Dowding* is, therefore, easily distinguished from the present action.

Plaintiffs also cite to the travel insurance policies in *Robbins v. Generali Glob. Assistance, Inc.*, 2:20-cv-04904 (C.D. Cal. 2020) and *Bauer v. AGA Serv. Co.*, 6:20-cv-03138 (W.D. Mo. 2020). (ECF No. 17, 9.) Respectively, those policies define quarantine as "the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests" and "mandatory confinement, intended to stop the spread of a contagious disease to which you or a traveling companion may have been exposed." (*Id*.) These definitions do not help Plaintiffs' case. The fact remains that the COVID-19 Civil Authority Orders and Travel Advisories do not impose isolation, and are not quarantine orders.

## V. CONCLUSION

For the reasons set forth above, Nationwide's Motion to Dismiss (ECF No. 13) is **GRANTED** and the action is **DISMISSED**. Accordingly, the Motion to Strike (ECF No. 14) is **DENIED as moot**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**